McINTOSH
*v.*
M. & P. INS. CO.

---

## CHARLES L. KNABE et. als. *v.* J. B. TERNOT et. als.

16    13
f123   456

The individual corporators may sue in their individual names when they have rights in the corporation to vindicate which relate to property or any intellectual gratification, the violation of which can be made the basis of a demand for money.

The act of the majority of the corporators is considered as the act of the whole. But as the individuals who compose a corporation do not directly own its property, so they act in the transaction of its business primarily as agents; and where the individuals composing one corporation formed a majority of another and separate corporation—*Held:* That they could not, as agents of the first apply to themselves, as agents of the second, for a lease of the property of the latter, and then, as agents of the same, grant it on such terms as should please themselves as agents of the former, in opposition to the wishes and protests of their co-corporators of the latter corporation, and to their exclusion. The co-corporators thus injured may repudiate this act of the majority upon these grounds; if they were joint owners, they could not be judges in their own cause, and if they were agents, they represented incompatible interests. The agents of a corporation when once appointed, or members acting in their stead, are subject to the same rules, liabilities and incapacities as agents of individuals and private persons.

An agent cannot be permitted to assume duties and trusts incompatible with his agency, nor validly exercise such agency after he has acquired an interest averse to his principal.

APPEAL from the Third District Court of New Orleans, *Duvigneaud, J. T. W. Collens,,* for plaintiffs and appellants. *E. Filleul* and *J. Tissot,* for defendants.

MERRICK, C. J. The plaintiffs, twelve in number, allege that they are regular members of an incorporated society established for mutual relief and succor, according to law, under the name and title of St. Andrew Lodge; that said corporation owns and holds certain lots of ground, with the buildings and improvements thereon, situate in this city, together with various articles of furniture, masonic paraphernalia, and other moveable effects contained in the buildings aforesaid.

That the members of said society, being all master masons, agreed to meet masonically, and did so meet in unity, until a conspiracy was formed by a number of members to exclude them (the plaintiffs) from their common enjoyment and possession of the property and domicil of the society, and to appropriate among the parties to said conspiracy the exclusive possession and use of said property, to the disturbance of the actual and real possession of them, the plaintiffs.

That in order to effect their design, the defendants (consisting of twen-

ty-two individuals) formed themselves into a separate corporation under the name and style of St. Andrew Lodge No. 5 ; and then applied to St. Andrew Lodge for a lease of its property, and being themselves all present at a meeting of the St. Andrew Lodge, passed a resolution leasing to themselves, that is, to St. Andrew Lodge No. 5, the property, masonic paraphernalia and movables belonging to St. Andrew Lodge, for a very inadequate rent, with the understanding that they should have exclusive and continuous possession and control of the leased property.

That the defendants carried said resolution *by their own votes*, notwithstanding the objections and protestations of the plaintiffs, who were not members of the new society incorporated under the name of St. Andrew Lodge No. 5, and in furtherance of their action, the defendants are about to exclude and prevent the plaintiffs from the use and enjoyment of said corporate property according to its destination, and are appropriating the same to their own separate masonic purposes.

And that the pretended lease of the property of St. Andrew Lodge, by the resolution carried by the votes of the defendants, violates the title and rights of the plaintiffs, and is illegal, null and void.

The plaintiffs pray that the keeper of the property of St. Andrew Lodge be enjoined from delivering the same to the exclusive use and occupancy of the defendants ; and further pray that the defendants be enjoined from preventing, interfering with, and obstructing the plaintiffs from visiting and using said property according to its destination ; that the resolution and lease in favor of St. Andrew Lodge No. 5 be declared null and void, and that the defendants be condemned *in solido* to pay heavy damages.

The plaintiffs amended their petition by making the St. Andrew Lodge a party defendant to the suit. The St. Andrew Lodge No. 5 was made a defendant in the original petition.

Exceptions were filed to the right of the plaintiffs to institute the action.

The same being overruled, the defendants answer by a general denial, and pray for damages on the dissolution of the injunction.

In June, 1856, a corporation under the general laws was formed, as stated in the plaintiffs' petition, called the St. Andrew Lodge. The plaintiffs and defendants all belonged to the same as members. The real estate, the subject of the lease, is the property of the St. Andrew Lodge. The members all being master masons, agreed to meet masonically, as stated in the petition, and adopted the Scotch Rite. They placed themselves under the jurisdiction of the Supreme Council.

The individual defendants constituting a majority of the members of the St. Andrew Lodge, applied to the Grand Lodge of Louisiana (which by law has power to erect masonic corporations under its jurisdiction) for a charter ; and the same being granted, they formed the legal corporation known as the St. Andrew Lodge No. 5.

By their own votes, they leased to the new corporation, also under their control, the property specified in plaintiffs' petition, and of the value therein stated.

It appears to be proven as well as conceded, that the plaintiffs have no right in virtue of their membership in St. Andrew Lodge, to participate with the defendants in the masonic meetings held in the buildings of the corporation by the members of the new corporation organized under the jurisdiction of the Grand Lodge. In fact, the proof shows that the doors

of the building were closed on one occasion against the plaintiffs and those wishing to meet with them under the Scotch Rite. The inadequacy of the price of the lease only appears by a comparison of the value of the property with the rent, and the fact of the exclusion of the plaintiffs from the use of the property. The questions made here are in substance the following, viz :

1st. Can the plaintiffs as individuals stand in judgment ?

2d. Are they not concluded by the act of the majority of their co-corporators, and is not the same binding upon them ?

It must be evident to every one that this court has only to deal with the questions of law which arise upon the state of facts presented by the record. What is authentic or conformable to the usages of masonry, can only be settled by those initiated in its mysteries. Whether the plaintiffs be or not true and accepted masons, concerns not this controversy. The St. Andrew Lodge is a legal corporation. So also is St. Andrew Lodge No. 5. The plaintiffs are members of the first named corporation, and the two, with certain members of both corporations, are the defendants to the suit. All these parties, plaintiffs and defendants, are capable of sustaining *legal rights*, and our endeavor must be to ascertain what those rights are in relation to the matters presented for our consideration.

I. Can the plaintiffs sue as individual members of a corporation ? On this point it is urged by the defendants' counsel, that the plaintiffs and defendants are corporators, and as such they have no interest whatever in the property of the corporation named St. Andrew Lodge." They cite Art. 427 of the Civil Code, which says : "The estate and rights of a corporation belong so completely to the body, that none of the individuals who compose it can dispose of any part of them."

Although corporations are distinct from the persons who compose them, and are considered as intellectual beings, yet it is well settled, that the corporators who compose the same, and through whose agency the affairs are managed, sometimes have rights in the corporations which they can protect in a court of justice. In monied corporations, legal proceedings on behalf of stockholders are of frequent occurrence ; and we know no reason, why members of other corporations should be excluded from the courts when they have rights to vindicate which relate to property or any intellectual gratification, the violation of which can be made the basis of a demand for money. There is, therefore, no objection to the proceeding in the names of the individual members. Indeed, this was the only mode in which the plaintiffs could present their grievances to the court ; for their co-corporators controlled both bodies, and they could thus prevent any suit from being commenced by the St. Andrew Lodge, the only body, besides themselves, who might vindicate the plaintiffs' rights. See *Dodge* v. *Woolsey*, 18 Howard 331, and *Zabriskees* v. *C. C. C. Railroad Company*, 23 Howard 395.

II. The second question raised in this case is, whether the plaintiffs are not concluded by the act of the majority of the members of the St. Andrew Lodge ? The Civil Code declares that : "In corporations, the act of the majority is considered as the act of the whole."

It being admitted that the resolution leasing the property of the St. Andrew Lodge to St. Andrew Lodge No. 5, was passed by a majority of the members present, notwithstanding the protests of the plaintiffs, presents a *prima facie* case of right on the part of the defendants, and this

position must be overcome by the plaintiffs. They suppose they have accomplished this, by showing that the individual defendants by whose agency the resolution was passed were incompetent to act by reason of their interest, and moreover, that the price or rent was inadequate. From its nature, a corporation aggregate is compelled by necessity to act through the agency of others, whether it be a meeting of members or officers elect.   C. C. 429.

It may be laid down as a safe doctrine, that the agents of a corporation when once appointed, or members acting in their stead, are subject to the same rules, liabilities and incapacities as the agents of individuals and private persons.  Story on Agency, No. 16.

It may be further affirmed as fundamental truths, that no man can be allowed to decide his own cause as judge, and that no agent can be permitted to assume duties and trusts incompatible with his agency, nor validly exercise such agency after he has acquired an interest adverse to his principal.  11 An. 411; 13 An. 20; Story on Agency, Nos. 9, 10 and 210.

The contract which is the subject of the present suit was formed by the agency of a majority of the corporators themselves, and hence it might at first blush be imagined that they were acting as owners rather than agents.   But as the individuals who compose a corporation do not directly own its property, so they act in the transaction of its business primarily as agents.   *Quod universitati debetur, singulis non debetur.*

The twenty-two individual defendants, therefore, who voted in favor of the resolution to lease the property of the St. Andrew Lodge, in so doing acted as agents of this corporation.   But at the same time, they had formed a new corporation in which they had acquired interests as members and corporators, and had assumed its management and care as agents.   Here then they had acquired interests and assumed duties incompatible with their agency in the affair of granting the lease:  They could not, as agents of St. Andrew Lodge No. 5, apply to themselves, as agents of St. Andrew Lodge, for a lease of the property of the latter, and then, as agents of the same, grant it on such terms as should please themselves in their capacity of agents of the former, and in opposition to the wishes and protests of their co-corporators of the latter lodge, and to their exclusion.

In another case, where a similar question is presented, it is said, in substance, that the mind is free in moulding its belief according to its apprehensions of truth, and hence, to limit its activity, and to stand in the way of change, is to set boundaries to human knowledge.   From this proposition is then deduced the right of the majority of the St. Andrew Lodge to change its mode of working out the charitable and social objects of the foundation.  See *Keiser et al.* v. *Stansifer et al.*, 6 Ohio Rep. 363.

Perhaps a majority of a corporation might have a right to prescribe radical changes in the creed or in the ceremonies and rites of a corporation, so that the same should not be in contravention of the objects of the corporation itself, and should not exclude any of the corporators from participating in and enjoying the advantages of the corporation under the new regulations so introduced.   But this is not the case before us.  The plaintiffs have never forfeited their rights as members of the corporation of St. Andrew Lodge ; yet, by an act of the majority, they are excluded from the property, and not permitted to enjoy the advantages which their brethren

derive from the property in connection with the new act of incorporation and charter from the Grand Lodge.

The plaintiffs are permitted to say : "we stand upon our act of incorporation ; we cannot by law be compelled, without any fault, to join another body of men, and become members of another corporation in order to enjoy what is lawfully our own. If the defendants will deprive us of our rights for their own advantage, they must do it through the agency of others than themselves. If they be joint owners with us, they cannot be judges in their own cause ; if they be agents, they represent incompatible interests."

From this view of the case, it seems to us clear from principle, that the lease granted by the St. Andrew Lodge, through the agency of the individual defendants, to St. Andrew Lodge No. 5, was voidable, and that the plaintiffs are entitled to relief against it as depriving them of the free exercise of their franchises as members of the first named corporation.

No particular damages have been proven in this case, and we think that justice will be done by rescinding the lease and enjoining the defendants from opposing any obstacles to the enjoyment by the plaintiffs, as members of the St. Andrew Lodge, of their common property at all reasonable times.

The pleadings raise no question as to any right claimed by a third corporation, the St. Andrew Lodge No. 6, to use the buildings belonging to the St. Andrew Lodge.

The controversy here is argued on the issues made by the *parties* to this suit, and on the questions submitted which have just been resolved in favor of the plaintiffs.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower Court be avoided and reversed ; and it is now ordered, adjudged and decreed, that said lease, described in plaintiffs' petition, from the St. Andrew Lodge to the St. Andrew Lodge No. 5, be rescinded and annulled, and that the defendants be enjoined from obstructing or preventing the plaintiffs, in their capacities of members of the St. Andrew Lodge, from visiting at all reasonable times the property belonging to said last mentioned corporation ; and it is further ordered, that the defendants pay the costs of both Courts.