On Application for Rehearing.
(June 30, 1904.)
BREAUX, C. J.
The corporation known as' the Pecot Sugar Factory Company was a separate and distinct organization. It was a corporate entity, with all the attributes of a corporation.
It was not liable for the individual obligations of its stockholders.
The members of a corporation are not liable for the personal debts of one of the stockholders (Thompson, § '7 et seq.), and stockholders individually are never bound for any obligation of the corporation, except under circumstances to which we will refer in a moment.
It is elementary that members of a partnership, as a rule, are jointly liable for the debts of the firm. The members of a corporation are not.
*365 The obligations of the individuals are not the obligations of the fictitious persons, nor the obligations of the corporation those of the individual stockholders.
The Roman law is direct upon the subject: “Si quid universitati debetur singulis non debetur nec quod debet universitatis singuli debent.”
While with partnerships it is different, as expressed by the Civilian: “Si quid societati debetur singulis debetur et quod debet societas singuli debent;” i. e., different from the corporation — the rights and liabilities of the partners are enforceable against them individually.
It was in pursuance of the idea of the separate entity of the corporation that this court said corporations are distinct from persons who compose them. Knabe v. Ternot, 16 La. Ann. 15.
Individuals cannot bind it by any acts of theirs, much less by anything they say. Ursuline Nuns v. Connelly, 22 La. Ann. 51.
The articles of the Civil Code and the different statutes on the subject of corporations treat them as separate persons in law, not liable for the debts of individual stockholders. Civ. Code, art 427. See, also, the different statutes upon the subject.
Not to dwell further on these particulars, we will conclude with the statement that it has never been held with any degree of reason that members of a corporation are liable for personal debts of one of the stockholders, or that the corporation itself is liable. Thompson, § 7 et seq.
A moment since we mentioned an exception to which we said we would refer later. It is expressed in the very decision and text to which defendant invites our attention.
In the case of Cupples Wooden Ware Company v. Illinois Pickling & Manufacturing Company, 51 La. Ann. 71, 24 South. 604, Guinle was the alter idem of the asserted company plaintiff was seeking to hold liable as his debtor. The court approvingly referred in that case to the following from the decision of the district court, which it made the basis of its own opinioni
“He is not a creditor oí the Illinois Pickling Co., as landlord or vendor, and the various acts of lease and sale were mere simulations.”
The quotation' suggests the nature of the issues presented to the court. Fraud vitiates all things,' not excluding corporations.
Again, another quotation to the same end as that above expressed, reads:
“The court will ignore the corporate existence where it is fraudulently used to do what the stockholders cannot legally do.” Cook on Corporations (4th Ed.) § 663.
There is no fraud invoked here. The corporate existence of the company is not attacked, and the pleadings do not, in the most remote manner, intimate the least impropriety of conduct of the corporation, or any of its members. In different ways since it was created, the defendant Pharr, and those from whom he holds, have recognized this corporation, and have never questioned the sincerity nor the legality of its transaction.
They have sought to prove by verbal testimony, as we understand, other conditions than those stipulated in the charter. They have sought to prove who were the incorporators, and this they did prove; and it was sought to prove that it was organized for the better management of the property; that the incorporators knew of the existence of the corporation.
The court restricted, by its ruling, the extent to which the defense sought to go by proof of verbal testimony. The court held defendant bound by written testimony which could not be contradicted by written testimony. But in all this there was no wrong charged against the corporation. We do riot think that the court erred in adhering to the best evidence, and In not allowing the defense to introduce questions which the pleadings and the papers did not sustain.
The main ground which the defense sought to show was that the PeCot Corporation was *367 a mere name of the Pecot heirs. We do not thus interpret the charter. Besides, the Pecot heirs, who owned the realty brought into the corporation, were not the only stockholders, and the Pecot heirs did not all bring to the mass of the corporation property burdened with mortgage due by the stockholders individually, as shown by the testimony.
Even if the heirs had thus organized themselves, the act of incorporation must govern. Those like Pharr and Ermann & Cahn, who had dealt with them, were not authorized to set aside its effect for the purpose of escaping the liability of their warranty.
When Ermann & Cahn sold the property to the Pecot Sugar Company, and bound themselves as warrantors, It was as if they had sold to any other third person, for the corporation in question was a third person.
Let us assume, for illustration,' that Ermann & Cahn, instead of selling to the Pecot Corporation, had sold to any other corporation, and that there was a mortgage bearing against one of the members of the corporation individually, and, in consequence, against the corporation as a third possessor, the creditor foreclosing a mortgage against the corporation would have no right to buy up the claim bearing against the corporation as a third person, and credit this claim on the price due by him; particularly if he was bound in warranty to the corporation.
The situation is the same as that presented by the issues here.
If there are any claims on the property, they are due by the member individually, and the corporation itself is only a third possessor, not personally bound for the debt.
The corporation not being personally bound for the debt, the warrantor is not released from his warranty to the corporation. He continues in the attitude of warrantor to the company.
Let us examine further into the particulars of the question involved. Ermann & Cahn and their transferee, Pharr, who stands in their shoes, through the latter foreclosed their mortgage and vendor’s privilege stated in the deed of sale in which they bound themselves as warrantors.
At the sale Pharr bought the «A 2 Part of certain tracts described in the decree, and the.o/n of the other tracts, and the whole of remaining tracts. Injunctions had been sued out, and the sale of the remaining fraction — that is, the 1/42 part of the tract — was restrained and arrested.
He became the buyer of these tracts for $82,000.
The amount of the notes on which execution issued on the day of sale was $70,573.10.
This amount, together with all costs, was considerably less than the price. The return, however, showed that they balanced to a cent — $82,000.
After it was discovered that this balance was not all sustained by items, then the adjudicatee sought to show and to charge the company with claims that he bought, which were asserted to be due by the stockholders individually, although, as before stated, he, as transferee, was bound by the warranty of his vendor.
We take up, in the first place, the claim of the creditor of one of the stockholders individually to 1/42 part of the place. It was not included in Pharr’s purchase at all, and yet, when the sheriff’s return did not balance, he sought to charge up to the corporation the amount which he paid for this claim at private sale, in order to acquire the whole property, of which he had only bought part, for which he had bound himself to pay the large price before mentioned.
He sought to offset the amount he paid to buy this fractional part at private sale by the claims which he had bought, as before mentioned, and this although bound by the terms of his deed to warrant against this very claim.
Pharr had been paid in full. He was without any right against any property which *369 had not been included in the deed, and yet an attempt was made to offset this fractional claim by deducting the amount from the price.
Another of the stockholders (Mrs. Angele Ooudroy, individually) was a warrantor of the title of the very property on which he ■claimed a mortgage; yet it seems that this claim was bought by the late Mr. Pharr, and he sought to have it credited on the price as ■a mortgage he had paid on the property, the title to which he was bound to as warrantor as before stated. Mrs. Coudroy held •claims as tutrix which Capt. Pharr bought. They are due and outstanding claims on the property, against which the said buyer’s vendors, Ermann & Cahn, had warranted. The warrantors, Ermann & Cahn, or their vendee, Pharr, could not buy these claims to the prejudice of his vendee.
Ermann & Cahn had sold the property, and it had been bought by the corporation, on the condition that they would warrant the title. They and their vendee could not get away from this contract, and buy up the very claim against which they had bound themselves to warrant.
It was a part of the stipulations of the «ales. Non constat that the corporation would have bought at all if it had been informed that the title was not, as to it, clear •of all claims. At any rate, that was the condition of the sale, from which it does not seem to us it is possible for Pharr to get away.
To again resume part of the facts, the property had been mortgaged to a creditor whose name was Fallon. He foreclosed his mortgage, and the property was sold and bought in by Ermann & Cahn, and afterward the Pecot Sugar Company bought from Ermann & Cahn. They must have had their warrantors, and still have, as to that matter.
Whatever rights the late Capt. Pharr may have, it is not against the Pecot Refining Company, buyer with warranty, as several times stated.
He had no right, in our view, to buy claims his author had warranted, and afterward seek to have them credited on his bid. It would be a new manner of proceeding to foreclose a mortgage, or to realize assets thereon.
Let us suppose, for the sake of illustration, that A. has a mortgage on B.’s property, a third possessor, for $1,000, and that C., a mortgagee of B., personally foreclosed his mortgage, and buys B.’s property. If, after some time, he finds that the sheriff’s return does not balance, he cannot buy the mortgage on the property of B., and have it credited to himself on the sheriff’s return. He cannot thus render a claim executory, and himself execute it, as it were, by buying it at private sale for such an amount as he and the creditor, from whom he buys, deem proper.
If A. buys property with full warranty, and it afterwards became known that there is an informality in the title, B., the warrantor, cannot buy and set up the adverse claim against A., the buyer from him.
If he buys an outstanding title, it only serves to confirm the title he has sold. The same is true as relates to mortgages and vendor’s privileges. The vendor of the property cannot claim adverse mortgages against which he has warranted, nor can he buy an outstanding mortgage at private sale, to be used toward bringing up the credit side of the sheriff’s return.
The judgment should be amended to conform with the views before expressed. The plaintiff is entitled to the amount of her claim, and to that amount she should be held. Therefore the judgment must be amended so as to limit recovery of plaintiff to so much of the amount of $5,746.80 in question as may be sufficient to pay her claim before mentioned, interest, and all costs.
It is therefore ordered, adjudged, and de *371 creed that our judgment heretofore handed down in this case be amended by limiting the recovery on plaintiff’s judgment, interest, and costs to the amount of the judgment set forth in plaintiff’s petition — that is, for the sum of $2,245.93, with 8 per cent, per annum interest thereon from March 1, 1894; in the further sum of $400, with 8 per cent, per annum interest thereon from May 1, 1894; in the further sum of $246.08, with 8 peícent. per annum interest thereon from June 23, 1894; and in the further sum of $50, with 5 per cent, interest thereon from December 25, 1894 (less a credit of $350, paid December 12, 1896); and all costs in proceedings in which judgment was obtained for said amount, to wit, No. 9,994 of the docket of the district court. As amended, our judgment heretofore handed down is affirmed.
Rehearing refused after having amended the judgment.
PROVOSTY, J., dissents.